All right. Let's see. I guess Mr. Lopato. Yes, Your Honor. May I please report that John Lopato from Washington DC, the attorney for the petitioner-employer Decker Coal Company. How's my volume, Your Honors? Can you hear me? It needs to be a little louder. Is this better? Yeah. If you could move the microphone a little closer, that will help or move closer to the microphone. That's what I'm going to do. Okay. Now you're cutting in and out. Can you adjust your sound to make your output higher? Actually, it's quite good right now. So continue and let's see what happens. This case presents important issues under the separation of powers doctrine regarding the appointment of an administrative law judge under the U.S. Department of Labor, with authority to issue compensation order in federal black loan cases. The problem with his appointment authority is that while he was appointed eventually by the Secretary of Labor, he continued to have a protection from removal or tenure protection in 5 U.S. 7521 that guarded against his removal only for cause determined by the Merit Systems Protection Bureau, which the Secretary of Labor would have no role in. Mr. Lopato, assuming for the sake of your argument that there is a constitutional problem with regard to presidential control over these ALJs, I'd like to direct your attention to APA section 706 that basically tells us that in reviewing the record, due account shall be taken of the rule of prejudicial error. And I'd like you to talk to me about what the impact of a ruling would be, not only on Mr. Peringer's case, but on all of the benefits review board decisions for black loan, all social security rulings, all immigration judge rulings. Are you asking us basically to invalidate all of these decisions and remand for re-trial before a properly accountable administrative law judge? Not at all, Your Honor. This is the only individual case before the circuit court at this time. Well, sure. I understand that you're only seeking relief for Decker Coal Company in its case against Mr. Peringer. Judge Tallman is asking if we, isn't the natural consequence of your position that we must overturn lots and lots of decisions because there are lots and lots of executive branch officials who are not removable at the will of the president. Wouldn't this exact same argument apply to every single decision made by the benefits review board? No, and this is by the administrative law judge, the benefits review board. No, I understand. Every decision made by an administrative law judge that went to a benefits review board. The Department of Labor has already clarified this and more than halfway solved this problem. Well, yeah, I assume the appointments, let's just, let's not joust. I assume the appointments clause problem is solved in the sense that they're all properly now appointed. But you say that doesn't solve the removal problem. And so my question is a very simple one. Your case is no different in that respect, is it? Than any other decision made by an administrative law judge in the Department of Labor, is it? No, no, because in August 2018, a few months after the leading Lucille, the Department of Labor acknowledged this problem of the protection from removal provision and appointed a whole new cadre of administrative law judges under schedule, what's called schedule E, that do not have this protection from removal provision. I'm asking going backwards. I'm asking going backwards. In fact, the Department of Labor is not required to hire ALJs subject to the merit for cause review at all. Congress did not require them to hire ALJs subject to that protection. Rather, it only commanded that the DOL adjudicators must be quote, unquote, qualified individuals. So doesn't that take this case out of the realm of the traditional, you know, dual or cause removal defect? The Lucille case acknowledged administrative law judges, those then appointed by the Securities and Exchange Commission and Judge Justice Breyer and his concurring and dissenting opinion in the Free Enterprise versus Public Accounts Act said that this code section, 5 U.S.C. 7521, is only aimed at administrative law judges. So it doesn't matter that they were appointed earlier than the appointment was ratified by the Secretary of Labor. And this particular judge, Judge Sellers, was appointed well before 2017 to the Office of Competitive Examination. In December 2017, as these Lucille-type issues began percolating in two circuits, the Secretary of Labor realized he had a problem with the authority of his ALJs. So he issued letters to 30 or 40 ALJs directly appointing them, ratifying their appointment. But he didn't disturb the protection from removal. Okay, so I still have the same question I asked you before, and I'm still not, I want to understand your position on it. With respect to ALJs who made decisions at a time when they, when the MSRB protection, Merit System Review Board protection applied to them, your position is that their decisions are void ab initio, is it not? Your Honor, the decision would have to, the issue would have to have been preserved. Okay, yeah, I understand. And whether or not, and I'm not sure that's right, that's a natural consequence of your position. But at least with respect to all those decisions, if someone challenges them, they go away. Correct? That's your position. I can't speak for these other advocates. I understand, but you're asking us to rule. See, that's... I understand, you'll be perfectly, if you want us to issue a mem disp that says your client wins. And the decision is confined only to this case. To your client. Well, I might be delighted to do so. I'm not sure we can. That's not why you took this case or why you're bringing it. You're bringing it to establish a constitutional principle. You may be right. Your Honor, we are bringing it because we want the supported party in the public accounting, public company accounting board case, and in the Arthrex case from the federal circuit. Yeah, but let's be straight with each other here. This is a, it's a relatively small award. We're really fighting, this case is really about a constitutional principle, as you said at the very outset. You may be right about that constitutional principle. We're trying to tease that out. But if you are right, then every decision made by an ALJ, at least prior to the time that this new removal policy was adopted, is, and that is challenged, must be overturned. Correct? Your Honor, the Secretary of Labor has not raised a floodgates argument. I don't care what the Secretary of Labor raises. I mean, the Secretary of Labor and the executive are perfectly happy with the current removal system. You're arguing it on their behalf. I would think it would be pretty easy to say to me, yes, that would be the consequence of our argument, but that's what the constitution requires. But I just want to, I'm concerned. Okay. Okay. Now that gets me to the remedy issue, which is why I didn't want to spend a lot of time with you over the obvious. The Fifth Circuit says, even if the statute's unconstitutional or the statutory scheme, nine people on the Fifth Circuit say we can sever that unconstitutional provision. And because the person is now removable after the severance, we don't have to overturn his decision, the ALJ's decision. That's a summary of, I think, the position that nine judges on the Fifth Circuit took. So assuming we agree with your constitutional argument, why shouldn't we simply do what the Fifth Circuit said with respect to remedy? Your Honor, because that remedy would be validating a compensation order issued in the federal black law case without the judge having full authority. The executive branch cannot excuse on it by this congressional statute. In our reply brief and PCOB, the public county case, I did the New York versus Allegheny County case. It said that the encroached upon agency cannot excuse the encroachment because it would unreasonably bind his executive successors. Counsel, I want to get an answer to my prejudice question because as I read the record, your client essentially engaged in what I would characterize as a lay down defense, which essentially amounted to no defense at all to the merits of the claim. Didn't file a reply brief or a rebuttal argument within the time set by the ALJ. Didn't file any additional evidence in the two months that it requested the record to remain open. Why would it be fair to overturn this result and send it back for a complete rehearing before a properly appointed and accountable administrative law judge when the claimant clearly is entitled to compensation? He's not entitled to compensation. He invoked this presumption of eligibility based on 15 and you didn't rebut it. Counsel, that's the problem I'm having. That's why I call it a lay down defense. There was no defense at all. He shouldn't have been allowed to invoke it because he lied about his coal mine employment history and his deposition. That only comes from evidence that was untimely submitted, which was properly stricken by the trial judge. I just don't see that the equities here are very favorable to Decker Coal Company. Now, if your answer is the equities don't matter, I understand it. But isn't that really your answer to Judge Talman? I don't care whether we were prejudiced or not. It doesn't matter. The judge didn't have the authority. That's your position, isn't it? I was finishing the description of why this claimant wasn't eligible. Okay. But my point is, even if the claim was eligible, let's assume you had no contest at all about the eligibility of the claim. Wouldn't you be making exactly the same argument with respect to the absence of authority of the ALJ? The merits of the case make no difference to your argument, do they? No, Your Honor, we have the right to- Let me phrase it differently so that we're not jousting with each other. The merits of the case, in your view, have no consequence with respect to your constitutional argument. Is that correct? The case requires a remand, so the constitutional argument cannot be avoided. Okay. Now, that leads me to another question I need some help. You're really attacking, in this case, a decision of the Benefits Review Board, aren't you? I mean, you're seeking review of the decision of the BRB. They declined to follow the free enterprise versus public- Yes, yes. The answer to my question is yes, you're attacking a decision. Okay. They are- I'm just going to say, counsel and judges, I'm just going to say I'm going to hold us to the time periods in this argument. It would be very helpful if you would just answer yes or no when it's yes or no. It's clearly and obviously a preliminary question by Judge Hurwitz so he can get to the real point, which may be the important point on which this case could turn. I'm just asking you as a matter of respect to mind the time and answer yes if the question is answerable by yes. Thank you. Here's the question I wanted to ask, and I guess I shouldn't have asked the preliminary questions. The Benefits Review Board is properly appointed and accountable. Does that make any difference in the outcome of this case? Well, we cited the law that they are removing bullet air. No, that's an example of how the Secretary of Labor cannot be impeded in removing judicial officers. That's a good example, but we emphasize that the two layers of protection here are exactly what the Supreme Court said in the enterprise case. I understand that. My question is, is that problem cured by the fact that the ALJ's decision is reviewable by a properly appointed and accountable board, which is to say the BRB? No, it doesn't affect that. All right. Thank you, counsel. We will now hear from the other side. Mr. Staltzman, you've asked for 10 minutes. Thank you, Your Honor, and may it please the Court, Joshua Ms. Scarpino will address the remaining issues in the case. All right. Mr. Staltzman, I have a question for you. I've been trying to see if there's any distinction between the Department of Labor and its appointment of ALJs and the Peekaboo case. And what we noticed was that Congress doesn't require the Department of Labor to hire ALJs to decide these issues at all. So doesn't that leave that issue of whether they want to hire ALJs or not hire ALJs in the executive branch and not in the congressional branch? And therefore, if the president wanted, he could just tell the DOL, don't hire ALJs, and that would get rid of the dual cause removal problem? Thank you, Your Honor. First, I just want to flag, I seem not to have my video functioning. It died literally just as I unmuted. I've tried repeatedly to reconnect it, and I'll try periodically, but I don't want that to distract from my argument. Okay, we can hear you just fine. Yes. Okay. And in response to your question, Judge Wardlaw, there are statutes that affect and do direct an ALJ to conduct a hearing at the Department of Labor. And given that an ALJ was involved in the conduct here, we don't think you can avoid the issue on that basis. But we do think Section 7521's longstanding protections for ALJs are totally constitutional. And I'd like to explain why, but before I do, I really do need to clarify one rather significant misstatement by opposing counsel, which is to suggest that the new ALJs that were appointed under Schedule E are not subject to 7521. The removal protections continue to apply. Those are statutory. That's not something an executive order can trump. And in fact, the OPM memo that's attached to the back of their blue brief, if you look at page three, says as much. So this is not something that's only retrospective. This is something that's still in place. So with respect to 7521, I'm having difficulty understanding your argument that a reasonable reading of it suggests that these folks are removable at the will of the executive branch. It talks about good cause. Oh, they're not removable at will, Your Honor, but that's not constitutionally problematic. And I'd like an opportunity to explain why. So these ALJs are inferior officers. They are subject to the direction and control of the Secretary of Labor, who can promulgate rules and regulations that the ALJs have to follow. And of course, their decisions are also reviewed by the Benefits Review Board. The Supreme Court has twice said, first in the 1880s in a case called Perkins, and then more recently in Morrison v. Olson, that inferior officers can have limited tenure protections. Those holdings were repeated and reaffirmed in both the Lucia case and the and Free Enterprise case. Lucia and Free Enterprise were something other than inferior officers? Well, let's take those one by one. Lucia was an Appointments Clause case. Lucia did involve ALJs. CILA law involved a principal officer. That was the head of the CFPB. And then Free Enterprise fund involved the PCAOB, which was supposed to be an inferior officer, but a very particular and different kind of an inferior officer from what's at issue here. They had removal protections that were a lot more stringent. If you read Free Enterprise Fund, it remarks about how rigorous and novel and limited the grounds were for removing the PCAOB. Well, go back to Lucia, if you will, for me, because the Appointments Clause issue and the Removal Clause issue come out of the same part of the Constitution. There's no Removal Clause in the Constitution. And the Supreme Court has said removal ability comes out of the appointment. It's implied from appointment. So if we're dealing with an inferior officer there and we have an Appointments Clause issue, doesn't it necessarily follow that the removal issue for inferior officers is governed by the same standard? Absolutely not, Your Honor. So if you think about Morrison versus Olson, for example, there was no question that the independent counsel was an inferior officer who had to be appointed by a court of law. But nonetheless, the Supreme Court still said that there could be a good cause removal standard in place as long as it allowed for removal in cases of misbehavior, which I think is similar to the standard that we have here. We also know seal of law recites and summarizes the Perkins and the Morrison cases I referenced earlier and says that the lesson of those cases is that inferior officers like this ALJ can have removal protections so long as it does not ultimately impede the executive's ability to discharge his constitutional duties. These removal protections are sufficiently lax and permissive and the scope of the ALJ's authority, which is limited to adjudicating individual disputes, applying fact to law in individual cases, is sufficiently narrow that there's no problem there constitutionally. And the other reason we know that is there's a Supreme Court case called Myers from the 1920s, which is often pointed to as the strongest statement of the need for it. It says inferior officers who are performing in a quasi adjudicative role or a quasi judicial role may be entitled to and can permissibly receive some degree of protection so that they can decide their cases. So all of those facts point towards a good cause standard here being permissible. So is it your position that the president could not remove the ALJ simply because the executive, obviously it's not the president, couldn't remove the ALJ simply because he disagreed with his decisions? So I want to be careful. So that Myers case I referenced earlier says that the relevant standard is the executive is allowed to look at whether on the whole the ALJ executes or wasn't an ALJ at the time, but the ALJ would fit within the category, exercise their discretion in a manner wisely and intelligently. What I do think the executive could certainly do is promulgate rules, guidance, policies that are binding on the ALJ. And if the ALJ disregarded them, so let's say the agency adopts a regulation or even a statement of policy. That might be good cause, but that's not the issue. The issue is whether or not the president gets to decide what's good cause, not the MSRB. And so I'm still stuck with the question. The president's removal power with respect to these ALJs is constrained under the current statutory scheme, is it not? It's not nearly as much as I think your honor suggests and not in a way that's inconsistent with the standard has laid out in Perkins and the good cause standard is capacious enough to allow for removal of poor performance. It's allowed poor performers or folks who are insubordinate or people who engage in misconduct. And that's really all that is necessary when you're talking about an inferior officer. Now, you brought up the role of the MSP. Yeah, that's that's important. Yeah, that is important to me because obviously if this were a one level problem, we wouldn't be facing it. But now if this board, not appointed by the president, not removable by him, says to the president or the secretary of labor, I'm sorry, you may think it's good cause, but we don't. This guy remains in office. Doesn't that create a constitutional separation of powers problem? It doesn't as long as the MSPB is role is properly understood. And the key precedent here is that Morrison case I mentioned again before and particularly footnote 33 of that decision. And what footnote 33 of Morrison tells us is that judicial review. So a review by somebody entirely outside the control of the president of whether the good cause standard has been satisfied doesn't create a constitutional problem. But we only had one level. We only had one level to the president. The problem is that once it gets to the courts, we can do whatever we want, I suppose. But but here we have two branch. We have the we have the secretary of labor and then we have the merit system review board. And the one part of Mr. Lopato's argument I haven't heard a good response to is that doesn't the merit system review board, not accountable to the president, have the complete power to define what good cause is perhaps subject to judicial review, of course. But they he can't be they can't he can't be removed absent them agreeing that there's good cause. Am I right? You're right that the statute says they're removable on good cause established and determined by the MSPB. And then the question is, does that involvement by the MSPB impede the president's ability to discharge his duties? And what we would submit consistent with footnote 33 of Morrison is that as long as they're the MSPB is just checking the factual predicates saying you said this guy was a drunk, you said this guy didn't do his duty or that he disregarded agency policy, the agency, the MSPB can consider the ALJ's arguments that though that the factual predicates are false or pretextual, they can go in and make sure that in a manner akin to what court would do. That doesn't impair the president any more than judicial review would. But could they say could they say, Mr. President, we don't agree with that reason for removing. We don't think that constitutes good cause. So I think there would be a constitutional problem if they usurp the policymaking role in such a way that the president could not remove a poor performer, somebody who was insubordinate or somebody who engaged in. No, I understand. The counsel, I think that the concern is that I guess the modern day concern of the court is that Congress is telling the executive that you that it is unable to remove people based on disagreements. And so that is violating principles of separation of power because the executive should be able to have people who will fulfill the executive's policies and not congressional aims in their in their offices, even at the inferior officer level. Well, I think it depends on the office, Your Honor. And that's why I wanted to take pains to to what the board in the Free Enterprise Fund case involved. This is an ALJ who is deciding an individual dispute, applying facts to law and has to follow the policies promulgated by the agency, which is headed up by a secretary of labor who's removable at will. So there's no danger here of the agency slipping from the president's grasp. If the agency doesn't like the penalties being suggested by an ALJ or the way the ALJ is approaching certain issues, the agency can promulgate a policy. The ALJ has to follow it. And if the ALJ refuses, then that's absolutely good cause for removal. And that's sufficient. But that's prospective. Let's think about retrospective. An ALJ makes a decision. The secretary says, I hate that decision. You gave him too much money. Or as Mr. Lopato says, you ignored the record. He was lying, whatever. And the secretary says, I don't want this ALJ anymore. It goes to the board and the board says, that's not good cause. You do agree under that circumstance, the secretary would be constrained from removing or firing the ALJ, don't you? I would agree that if it wasn't in subordination, if there was a gap in the applicable policies and it was a single decision, then that might not rise to the level of good cause. But I don't think that impinges on the president's power. Remember, the ALJ decision here is still subject to review by the Benefits Review Board. So even that one case, you're saying you're basic. What we're willing to say is the ALJ gets one free bite and the one free bite isn't really a problem, especially when there's further review within the department anyway. And I don't think that that creates a constitutional problem and Meyer says so. And I apologize for taking you over. But frankly, I don't think in my view, there's a serious appointments clause problem in this case, which I think it's the removal issue that's most interesting, which is why I apologize to your colleague for taking away some of her time. Yeah, I think we all are more interested in the removal issue and question. And my comment to Mr. Salzman is I can understand what you're saying in the context of workers' compensation, but I can see it. There's a very analogous situation in the immigration judge area, which is reviewed by the Board of Immigration Appeals, and where there are serious efforts to conform those decisions to the executive's policy. And what do you do then when an IJ isn't following the policy in terms of... So, I mean, I think this has some implications for so many other agencies. Anyway, so that's why I think it's worth giving you a little more time. But maybe we should go to Ms. Garpino now. Okay. Thank you, Your Honor. You need to unmute, Ms. Garpino. I apologize, Your Honor. This is not a mute court. May it please the Court, I'm Ann Marie Garpino. I represent the Director, and I would like to address the issue raised by Mr. Lopato regarding modification. The question before the Court here is, where does modification properly begin in black lung cases? That answer is found in the regulations that have been promulgated by the Department under the Secretary's broad authority. Under those regulations, modification must begin with the District Director in accord with the procedures for filing all claims under the Act. That regulation is consistent with case law from the Fourth and Sixth Circuits that is directly on point. It is also consistent with Section 922 of the Longshore Act, which requires that modification procedures follow the same procedures for claims in longshore cases. Under the regulation, the District Director has three choices when addressing modification. He or she can send the case to the ALJ, deny the case for reason of abandonment, or issue an informal order that informally resolves the particular issue at hand. What the regulations do not allow is for what Mr. Lopato has asked for here that the ALJ initiate modification. Contrary to Mr. Lopato's argument, Palmer Coking does not require that particular result because Palmer Coking is an opposite. In that case, the Court did not address what is before the Court here, that is where modification begins, but rather whether the District Director can modify a decision of an ALJ based on a mistake of fact. In fact, I would note that the regulations have incorporated Palmer Coking to the extent that when a District Director initially initiates modification proceedings of an ALJ decision, or a party requests such modification based on a mistake of fact, that the District Director is required to send that to the ALJ. I see that I am out of time. Thank you very much. We would ask that the Court affirm the Board's decision. Thank you. Mr. Austin. Thank you, Your Honor, and may it please the Court, I am here today representing the actual claimant in this case, the coal miner, Mr. Perringer. I think Judge Coleman hit the nail right on the head when he said this is really a constitutional case, but I do want to very quickly address a couple of issues that an employer did raise in its brief. The first issue was this untimely post-hearing, post-decision submission of employment records that an employer believes would get it down below 15 years, and I think the Court understands why that's important in these federal black loan cases. But the ALJ actually considered this properly, and it's supported by substantial evidence. I want to point out, Your Honors, 1,307 days passed from the day my client filed the claim until that 20-day deadline before the hearing when employers should have submitted that evidence. And, of course, 20 CFR 725-456B states that no documentary evidence will be admitted in a case unless the other side does not object to it or unless good cause has been shown. Of course, I objected to it at the hearing based on the 20-day. The judge overruled my objection, allowed employer post-hearing time to submit it. He did not do it in that time frame. It allowed an extension. He didn't do it in that time frame, and then, of course, he didn't submit a closing argument. So, you know, this Court reviews discretionary decisions of an ALJ, you know, applies broad deference to the ALJ, and I think here, you know, the judge was well within his reason to reject this untopped evidence. Judge's issue number two is the length of coal mine employment computation. There were five pieces of evidence in this case that Judge Sellers did consider in getting beyond those 15 years. Those pieces of evidence were properly admitted. Those, that evidence included a proposed decision in order of awarding benefits where the director found 21 years based on the Social Security earnings record, a letter that my client worked there from 1977 to 1999, the miner's application for benefits where he listed all the places he worked over the years, my client's testimony, which Mr. Locato actually took one week before the hearing where he could have asked those same questions and made those I would argue that Judge Sellers has a model approach in this particular case. He has a five-page single-spaced decision wherein he analyzed each and every year of coal mine. Let me give you two examples that prove that point. Number one, he only gave 0.27 years for the year 1977 because my client had no steel earnings. He gave no credit for the years 1988, 1989, and 1990 because my client was on strike. So, in a finding of 17.03 years, I think it's pretty clear that he had analyzed this record based on the properly admitted evidence and got beyond 15 years. And your honors, I see that I'm running out of time. I did have one more issue to address, which is the legal and independent answer to this. I know that's going to take me beyond my time. I have to very quickly address that report to the commission. Counsel, I don't want to speak for my two colleagues, but I think I understand the distinction of those terms. I think we're fine on that issue. I think we should let Mr. Lupato have a couple minutes for rebuttal. Thank you, your honors. Your honor, the Merit System Protection Board is a more entrenched second layer of removal impediment than was present in the Free Enterprise versus Public Accountability. The Free Enterprise Securities Exchange Commissioners could remove a board member and the Securities Exchange Commissioners themselves could be removed by the president who appointed them with the consent of the Senate. In the Merit System Protection Board, they make the good cause determination if an ALJ can be removed with no role for the Secretary of Labor. The Merit System Protection Board members are appointed pursuant to five U.S. Code 1201D to the president, and they can only be removed for inefficiency, neglect of duty, or malfeasance in office. So it's an even more entrenched dual layer of removal authority. Now, the Section 22 modification is not a penalty to do. It's a search for the truth. And counsel is incorrect. This court has said in the Palmer case that a district director, formerly called Deputy Commissioners, cannot undo a mistake of fact by the ALJ. It would be futile and wasteful for us to start with the district director. We cited Section 22 to the Administrative Law Judge and to the Benefits Review Board, and they would not consider it. This case needs to be sent back to a new ALJ other than Judge Sellers. Regardless of his Supreme Court. But in Lucia, you agree that the inferior officer, if you will, or the officer had actually taken substantive action on the case before he was appointed. That's not true here, is it? No, Your Honor. He took, he heard the case after his appointment in December 2017. Yes, he took, but he still has the impediment, the improper protection from tenure provision in 5 U.S. Code 7521. Thank you. But if you have no other questions, Your Honor, thank you. All right. Thank you very much. Do you have another question, Judge Horowitz? No, I think we should stay on time. No, no, I do not. We're hardly that. Okay. Decker-Cull v. Peringer will be submitted.
judges: Wardlaw, Tallman, Hurwitz